Statement.

## Richmond

### SOUTHERN MUTUAL AID ASSOCIATION AND OTHERS V. BLOUNT AND OTHERS.

March 9, 1911.

Absent, Harrison, J.

1. CORPORATIONS—*Stocks and Stockholders—Illegal Consideration—Cancellation—Allegation of Illegality.*—Where preferred stock in a company has been issued by the company for a consideration which grew out of a scheme to suppress bidding at a public sale of lands, the illegality of the purpose for which the stock was issued cannot be relied on as a ground for cancelling the stock which has passed into the hands of third persons. The general rule, subject to some exceptions of which the case in judgment is not one, is that a party to an illegal contract cannot set up a case in which he must necessarily disclose an illegal purpose as the ground-work of his claim.

2. CORPORATIONS—*Stock and Stockholders—Sale of Business and Assets of Corporation—Rights of Stockholders Against Purchaser—Case in Judgment.*—Where the assets and business of a corporation have been sold and transferred to others who have taken possession thereof and have so used and dealt with the same that it is practically impossible to have the business of the corporation (so used and appropriated by the purchasers) restored, or its present value ascertained, a court of equity may, at the instance of those preferred stockholders of the company who had no voice in the sale and did not assent thereto, ascertain the value of their stock at the date the business and property of the company was appropriated by the purchasers, and give decrees against them for the amounts so ascertained.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for the complainants. Defendants appeal.

*Affirmed.*

*Frick & Williams,* for the appellants.

*R. Randolph Hicks,* for the appellees.

Prior to and in the month of April, 1905, the United

States Mutual Savings and Insurance Company, a corporation chartered under the laws of this State, and the Southern Mutual Aid Association, a corporation chartered under the laws of the State of Alabama, were doing business in this State.    On the 5th day of that month the following agreement was entered into by those companies and their respective managers:

"(1) The said C. P. Orr agrees to pay the sum of four thousand dollars ($4,000.00) for a one-half (½) interest in the stock and business of the United States Savings and Insurance Company, two ———— ($2,000.00) dollars cash, one thousand ($1,000) dollars in six (6) month– and one thousand ($1,000) dollars in twelve months from date, said deferred payments to be evidenced by the negotiable promisory notes of said C. P. Orr, bearing date six (6) per cent. per annum. .

"(2) The affairs of the United States Mutual Savings and Insurance Company are to be settled up to date of purchase and a one-half (½) ownership transferred to the said C. P. Orr, free and clear from all debt or liabilities of the company, excepting the sum of five hundred ($500) dollars, being a balance due to the National Bank of Commerce, and also excepting the acquirement of thirty-six hundred ($3,600) dollars of the preferred stock of the United States Mutual Savings and Insurance Company which was issued to J. S. DeShazor, and has been by him transferred to other hands, which said thirty-six hundred ($3,600) dollars of preferred stock was issued in part payment of the lots bought at Providence Church, Norfolk county, Virginia; the said sum of five hundred ($500.00) dollars to said bank and the said purchase price of thirty-six hundred ($3,600) dollars for said *preffred* stock to be borne jointly by said C. P. Orr and the said I. S. D. Sauls.

"(3) The insurance business of the United States Mutual

Savings and Insurance Company is to be immediately or as soon as practicable transferred to the Southern Mutual Aid Association in such manner and by such means as the said C. P. Orr and I. S. D. Sauls may deem best calculated to accomplish said result, and when said business is transferred the entire Virginia business of the said Southern Mutual Aid Association in the State of Virginia is to be owned one-half (½) by the said C. P. Orr and the Southern Mutual Aid Association and one-half (½) by the said I. S. D. Sauls.

"(4) The said I. S. D. Sauls is to be immediately elected vice-president of the said Southern Mutual Aid Association and made general manager of the said association's business in the State of Virginia, which said position as vice-president and general manager the said I. S. D. Sauls is to retain until such time as said arrangements may be terminated as hereinafter provided in section ———. Of the profits arising from said Virginia business, the said I. S. D. Sauls is to have seventy ($70.00) dollars per week as his salary, and after said payment has been made then the said C. P. Orr out of the remaining profits is to have a salary of forty ($40.00) dollars per week, and any balance remaining over and above said payments or salaries shall be used to liquidate the indebtedness of five hundred ($500.00) dollars to the National Bank of Commerce, and to purchase the thirty-six hundred ($3,600) dollars of preferred stock hereinbefore referred to. This disbursement being calculated on the basis of the Virginia business of the Southern Mutual Aid Association earning a net profit of one hundred and fifty ($150) dollars per week. Should it become apparent at any time that the average weekly earnings net more than one hundred and fifty ($150.00) dollars weekly, the compensation of said I. S. D. Sauls and C. P. Orr respectively may be increased proportionately as one hundred and fifty compares with the defined average

weekly profits.  In event, however, that the said profits do not equal said sum per week, or in event said profits are not a sufficient sum to pay said I. S. D. Sauls his aforesaid salary of seventy ($70) per week, then any deficiency is to be carried over and deducted from the next succeeding week, etc., until any arrearages in said salary of said I. S. D. Sauls may be made whole.  Any surplus that may be created after paying salaries od said Sauls and Orr, and after retiring the five hundred ($500) dollars due the Bank of Commerce and the *thirty-six* ($3,600) *dollars* preferred stock will be held and used assets or in the promotion of the larger company, but the said Sauls and Orr, may upon mutual consent distribute said surplus in whole or in part, each receiving one-half ($\frac{1}{2}$) of the amount distributed.

"(5)  The said C. P. Orr is to collect the coupons of the bonds for the sum of ten thousand dollars ($10,000) deposited in the hands of the treasurer of the State of Virginia, which bonds have been placed in the hands of the treasurer of the State of Virginia for the purpose of protecting the business of the said Southern Mutual Aid Association in this State, and in addition thereto, the said C. P. Orr is to have annually six (6) per cent. upon the face value of said bonds, or six hundred dollars ($600.00) per year as interest, which said sum is to be paid to the said C. P. Orr as convenient, and is to be charged against the expense of operating in said State of Virginia.

"(6)  It is the intention of C. P. Orr and said I. S. D. Sauls and the object of this amalgamation that they may build a larger and a stronger company to operate throughout the South, and to that end it is understood and agreed that as soon as the plans for said larger company can be perfected and the business of the said Southern Mutual Aid Association in this and other States amal*ga*ted into a larger and stronger company that the said Virginia busi-

ness of the said Southern Mutual Aid Association shall go into said company and that there shall be issued to said C. P. Orr and I. S. D. Sauls stock in said company in proportion that the Virginia business bears to the entire business taken over by said company.

"It is further mutually understood and agreed between the said parties hereto, that at the time *of* the larger company is formed as mentioned in paragraph 6 of this contract that the said company shall, in addition to allowing to the said I. S. D. Sauls, stock as provided in said paragraph 6 arrange*d* with said I. S. D. Sauls for such a position with said company at such salary and for such length of time as may be satisfactory to the said I. S. D. Sauls and in any event there is any disagreement with said Sauls and said larger company, so proposed to be formed as to said compensation, position and time of employment that in that en*v*ent instead of putting the Virginia business of said Southern Mutual Aid Association in said larger company, that the said .I. S. D. Sauls shall have the right to elect whether or not he shall buy up the one-half (½) interest of the said C. P. Orr in said business, or shall sell his one-half (½) interest to said C. P. Orr in said business, and the price at which said I. S. D. Sauls shall buy or sell, in event the parties hereto canot agree thereon, shall be left to arbitration; the said C. P. Orr to select one and the said I. S. D. Sauls to select one party and the two (2) so chosen in event they fail to agree, then they to choose a third party; all parties so chosen to be those having a knowledge of the value of business of this character and the decision of the three so chosen to be *the* final and binding upon the parties hereto.

"In testimony whereof, the said Southern Mutual Aid Association has caused these presents to be signed in its corporate name by its president, who has heretofore been duly authorized to execute the same in its behalf, and the

said United States Mutual Savings and Insurance Company has caused these presents to be signed in its corporate name by its president and its corporate seal to be hereto affixed by its secretary and the said C. P. Orr and the said I. S. D. Sauls have also affixed their signatures and seals, this ———— day of April, 1905."

On the 14th of September, 1907, at a meeting of the directors of the United States Mutual Savings and Insurance Company, the following resolution was passed:

"That whereas it has been found impossible to execute as originally contemplated all the provisions in a certain contract of agreement bearing date of April 6, 1905, and executed by the Southern Mutual Aid Association and C. P. Orr, and the United States Mutual Savings and Insurance Company and I. S. D. Sauls, and it has been agreed by the parties thereto to settle and discharge all obligations therein contained in the manner hereinafter set forth.

"Now, therefore, be it resolved that the corporations enter into the following contract, its officers being hereby authorized and directed to execute the same:

"Whereas, by contract entered into on the sixth day of April, 1905, by and between the Southern Mutual Aid Association, a corporation organized and existing under the laws of the State of Alabama, and C. P. Orr, of the city of Birmingham and State of Alabama, parties of the first part, and the United States Mutual Savings and Insurance Company, Incorporated, a corporation organized and existing under the laws of the State of Virginia, and I. S. D. Sauls, of the city of Norfolk and State of Virginia, the parties of the second part, it was agreed that the said United States Mutual Savings and Insurance Company, Incorporated, should transfer to the parties of the first part all of its business for certain considerations therein set forth; and whereas the said parties of the first part have paid the four thousand dollars agreed in the first paragraph of the

said agreement to be paid and the sum of five hundred dollars, being the balance due to the National Bank of Commerce by the said United States Mutual Savings and Insurance Company, Incorporated, as set forth in the second paragraph of the said contract; and whereas the profits of the business therein agreed to be transferred and which business has been transferred, as contemplated in the said agreement, have not proved sufficient to pay the seventy dollars per week therein agreed to be paid to the said I. S. D. Sauls and forty dollars per week therein agreed to be paid to the said C. P. Orr, as salaries to the said parties, so that there has been no balance out of which the five hundred dollars therein agreed to be paid to the National Bank of Commerce could be paid or the purchase of thirty-six hundred dollars of preferred stock referred to in the said contract could be acquired; and whereas it is now apparent that there will never arise, from the business that was transferred, profits sufficient to pay the said salaries and the said indebtedness of five hundred dollars; and whereas the said five hundred dollars, which could not be paid out of the said profits, have been paid by the said parties of the first part; and whereas, in the said contract, it was agreed that the affairs of the United States Mutual Savings and Insurance Company, Incorporated, were to be settled up to date of transfer of the said business, and the said business was to be transferred free and clear from all debts and liabilities of the United States Savings and Insurance Company, Incorporated, except as therein otherwise set out, but there have been no assets in the treasury of the United States Mutual Savings and Insurance Company, Incorporated, with which the said debts and liabilities could be paid, but that the said parties of the first part have been compelled, in consequence of litigation begun and other litigation threatened, to pay the indebtedness of the United States Mutual Savings and Insurance Company, Incorpor-

Statement.

ated, to an amount approximating two thousand dollars; and whereas the United States Mutual Savings and Insurance Company, Incorporated, has at no time since the execution of the said contract been able to carry on its business, and is not now able to pay the indebtedness due to the said parties of the first part by reason of the payments hereinbefore set forth; and whereas the considerations already paid by the parties of the first part are greater than the consideration agreed in the above contract to be paid, and it has been found impossible, in consequence of influences inimical to the said companies and not then foreseen, for any consideration contemplated at that time, to purchase the outstanding preferred stock therein agreed to be purchased, even if there had been resources from which this purchase could be made; and whereas the said parties of the first part are willing to release the said parties of the second part from all claims against them for the advances made by them, in consideration of the release of the said parties of the second part of any and all further claims against the said parties of the first part growing out of the transfer of the business;

"Now, therefore, this indenture witnesseth: That, in consideration of the premises and the release above set forth, the said United States Mutual Savings and Insurance Company, Incorporated, doth hereby grant, transfer, set over and confirm unto the said Southern Mutual Aid Association all of its business, as contemplated in the contract above referred to, and all rights and appurtenances thereto, free and clear from any obligations still remaining to be performed, as set forth in the said contract, and from any and all claims whatsoever on the part of the United States Mutual Savings and Insurance Company, Incorporated, and the said Southern Mutual Aid Association doth release the said United States Mutual Savings and Insurance Company, Incorporated, from any and all claims which it may

hold against the said company, and the said C. P. Orr and I. S. D. Sauls unite in these conveyances and releases and are released from all and every obligation whatsoever growing out of the aforesaid contract."

At a meeting of the holders of common stock (holders of preferred stock had no vote in the management of the company) of the United States Mutual Savings and Insurance Company, the action of the board of directors was ratified and the agreement of release therein provided for executed by the parties.

Twenty-five of the thirty-six shares of the preferred stock of the United States Mutual Savings and Insurance Company never having been acquired or paid for, as provided for by paragraph No. 2 of the said agreement of April 5, 1905, the holder of ten shares thereof instituted this suit in February, 1908, against the parties to said agreement to subject the assets of both companies, as far as might be necessary, to the redemption of his stock. To this suit the holders of the remaining fifteen shares of stock became parties by petition and asked for the same relief as the complainant. Upon a hearing of the cause, the court being of opinion that the business and property of the United States Mutual Savings and Insurance Company transferred to the Southern Mutual Aid Association was impressed with a trust for the benefit of the appellees, directed one of its commissioners to take and state an account showing the value of the stock of the appellees as of the date of the said transfer. The commissioner reported that the value of the stock was twenty-four dollars per share; and the court, overruling all exceptions to the report, confirmed it, and entered a decree for the sum so found in favor of each holder of the stock against both of the companies and I. S. D. Sauls, but not against Orr, the other defendant, as he was a non-resident and no process had been served on him. From these decrees the Southern Mutual Aid Association and Sauls obtained this appeal.

Buchanan, J., (after making the foregoing statement) delivered the opinion of the court.

The appellants insist that the decrees complained of are erroneous upon three grounds: (1) Because the court denied the prayer of the defendants' cross-bill to cancel the stock held by the appellees; (2) because it held that the Southern Mutual Aid Association was liable to the appellees; and (3) because it held that Sauls was liable to the appellees.

As to the first contention: If it be true, as claimed by the appellants in their answer, which was treated as a cross-bill, that the preferred stock of the appellees in the United States Mutual Savings and Insurance Company was issued for a consideration which grew out of a scheme to suppress bidding at a public sale of lands, it cannot be relied on as a ground for cancelling the said stock of the appellees.

The United States Mutual Savings and Insurance Company, which issued the stock, was a party to the alleged illegal scheme to suppress the bidding; and the general rule is, and no principle of law is better settled than, that a party to an illegal contract cannot set up a case in which he must necessarily disclose an illegal purpose as the ground-work of his claim. The rule is based upon the maxims of the common law, *"Nemo allegans suam turpitudinem est audiendus," "Ex dolo malo non oritur actio,"* and *"In pari delicto potior est conditio defendentis."* See *Harris* v. *Harris,* 23 Gratt. 737, and authorities cited; 9 Cyc. 546-7, and cases cited in notes.

There are exceptions to the general rule, but this case does not come within either of them.

The trial court, we think, properly refused to cancel the stock held by the appellees since the claim for that relief was based upon the alleged agreement to suppress bidding,

and the stock had been issued and passed into the hands of third persons.

The other objections made to the decrees appealed from— viz., that the court erred in decreeing against the Southern Mutual Aid Association and against appellant Sauls in favor of the appellees—may be considered together.

It appears that the insurance business and property of the United States Mutual Savings and Insurance Company were taken possession of by the Southern Mutual Aid Association, Orr and Sauls, and that they so used and dealt with the same, especially the insurance business, which was the principal asset of the United States Mutual Savings and Insurance Company, by causing its policy holders to surrender their policies in that company and to accept policies of like effect in the Southern Mutual Aid Association; that under the facts disclosed by the record it would be practically impossible to have the insurance business of the United States Mutual Savings and Insurance Company, so used and appropriated by the said Southern Mutual Aid Association and Orr and Sauls, restored or its present value ascertained. This being so, the most equitable manner of adjusting the claims of the appellees was that adopted by the court of ascertaining the value of their stock at the date the business and property of the company whose stock they held were so appropriated, and decreeing against the parties who had appropriated the property of the company in which the appellees held stock, without regard to their rights.

The contention that the appellees were guilty of laches in asserting their rights under the facts disclosed by the record is wholly without merit.

We are of opinion that there is no error in the decrees appealed from to the prejudice of the appellants, and that they should be affirmed.

*Affirmed.*