# Staunton.

## VIRGINIA HARDWOOD LUMBER COMPANY v. T. B. HUGHES.

### September 18, 1924.

1. APPEAL AND ERROR—*Signing Bill of Exceptions—Date on Bills Conflicting with Order of Court—Case at Bar.*—In the instant case final judgment was entered April 13, 1923. Each of the bill of exceptions bore the following certificate of the judge: "Teste: This the 4th day of June, 1923, and within sixty days from the time at which final judgment was entered. Teste: Wm. E. Burns, Judge." On the 12th of June, in vacation, the judge entered an order certifying that "defendant this day tendered its several certificates of exceptions and thereupon the judge did sign said certificates." It was contended that the order of June 12th was the only competent and legal identification of the certificates, and that the date mentioned in the order was conclusive over the date mentioned in the certificates of exceptions themselves, as to the time they were signed.

   *Held:* That there was no merit in this contention.

2. EXCEPTIONS, BILL OF—*Exceptions as Part of the Record—Effect of Signing Bill or Certificate.*—Under sections 6252 and 6253, Code of 1919, the signing of certificates and bills of exceptions makes them a part o the record as fully and completely as if copied at length on the order book and signed by the judge. Section 6252 provides that "any bill of exception so tendered to and signed by the judge * * * shall be a part of the record of the case;" while section 6253 provides, *inter alia*, that the appellate court shall consider "any exception * * * preserved of record in such cause by the certificate of the trial judge as provided by this section." This section prescribes a form of certificate to be used, which provides for the *time* of the signing of the certificate to be shown *in* the *certificate itself.*

3. EXCEPTIONS, BILL OF—*Order of Court Showing that Bill of Exceptions have been Tendered and Signed—Conflict between Order and Bill.*—While it is entirely proper to have the court or judge enter an order showing that the certificates or bills of exceptions have been tendered to and signed by the judge, the statutes now in force do not require that this be done. All that is necessary is for it to appear from the order book,

or the certificate or bill of exception, that the date on which the judge affixed his signature thereto was within the time prescribed by law. And, where there is a conflict between the dates, the date mentioned in the certificate as to the time it was presented to the judge and signed by him is conclusive over the date stated in the court order.

4. Sales—*Time of Shipment*—*"At Once."*—Where a letter from purchaser to seller directed that the subject of the sale should be shipped "at once," this did not mean a simultaneous shipment with the receipt of the order, but meant a prompt and an immediate shipment.

5. Contracts—*Acceptance must Correspond with Offer—Change of Terms.*— The offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters, which it may please him to insert in and make a part thereof, and the acceptance to conclude the agreement must in every respect meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with these just as they stand.

6. Sales—*Offer to Sell—Time of Acceptance—Offer by Mail.*—An offer to sell goods sent by the mail in the usual course of business, without expressly requiring an answer by return mail, must generally be accepted by the mail leaving during business hours on the day the offer is received, although not necessarily by the next post.

7. Contracts—*Acceptance—Subsequent Acceptance After Rejection.*—If an offer is rejected either by an absolute refusal, or by an acceptance conditionally, or not identical with the terms of the offer, or by a counter proposal, the party making the original offer is relieved from liability on that offer, and the party who has rejected the offer cannot afterwards, at his own option, convert the same offer into an agreement by a subsequent acceptance. For that purpose he must have the renewed consent of the person who made the offer.

8. Sales—*Subsequent Acceptance After Rejection—Notice of Acceptance— Prompt Shipment—Case at Bar.*—In the instant case defendant offered to purchase from plaintiff a steam feed for a saw mill and directed that the steam feed should be shipped promptly. Plaintiff failed to notify defendant of his acceptance of its offer, owing to his absence, for ten days and did not ship the steam feed for fifteen days.

*Held:* That there was never any binding contract between defendant and plaintiff and there was no liability on the defendant for refusing to accept the steam feed.

9. Sales—*Notice not to Ship by Buyer—Action by Seller for Purchase Price.*— In an action by seller for the purchase price of a steam feed, plaintiff cannot recover where he admits that he was notified by buyer not to ship the steam feed before he shipped it. It was his duty, under the circumstances, to accept the situation and terminate all relations and sue for the breach and prove his damages.

10. SALES—*Notice not to Ship by Buyer—Action by Seller for Purchase Price—Damages.*—In an action by a seller for purchase price of a steam feed which the buyer before shipment had notified him not to ship, there was no evidence to prove that seller could not have sold the steam feed at the place of shipment or elsewhere for as much as he claimed defendant had offered for it, or that he would have been damaged one penny if he had not shipped it to the defendant.

*Held:* That under these circumstances plaintiff could not recover.

11. DAMAGES—*Necessity of Proof of Damages.*—Damages cannot be recovered where none are proven.

Error to a judgment of the Circuit Court of Russell county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed and final judgment.*

The opinion states the case.

*Burns & Kidd,* for the plaintiff in error.

*S. B. Quillen,* for the defendant in error.

WEST, J., delivered the opinion of the court.

Virginia Hardwood Lumber Company, hereafter called defendant, complains of a judgment against it in favor of T. B. Hughes for the purchase price of one steam feed of the value of $450.00.

The defendant in error, hereafter called plaintiff, moves to dismiss the writ of error and supersedeas granted herein on the ground that no certificate or bill of exception has been taken, certified and made a part of the record in the manner and time required by law.

[1] This was a proceeding by notice of motion for judgment. The verdict of the jury was rendered

December 7, 1923.   The defendant moved the court to set aside the verdict as contrary to the law and the evidence.   The court took time to consider, and the final judgment was entered April 13, 1923.   Each of the bills or certificates of exception bears the following certificate of the judge:   "Teste:   This the 4th day of June, 1923, and within sixty days from the time at which final judgment was entered.   Teste: Wm. E. Burns, judge."

On June 12, 1923, in vacation, the judge of the court entered an order certifying that "the defendant by counsel this day tendered to the judge of the said circuit court its several certificates of exceptions numbered from one to six, inclusive, praying that the said certificates may be signed, sealed, filed and made a part of the record in this case, and thereupon the judge of this court did sign said certificates of exceptions numbered from one to six, inclusive, which certificates embrace all of the evidence in the case, all the instructions given in the case and certain instructions refused in the case, and certain objections to admission of evidence and statements by counsel; and it is now ordered that all of said certificates be made a part of the record in this case, which is accordingly hereby certified to the clerk of said court, and he shall enter this order in his order book and this order is also made a part of the record in this case."

We cannot concur with the contention of the defendant that the order of June 12th, *supra*, is the only competent and legal identification of the certificates, and that the date mentioned in the order as to the time they were presented to the court and signed by it is conclusive over the date of June 4th mentioned in the certificates of exceptions, and that the order is paramount and controlling.

[2] Under sections 6252 and 6253, Code of 1919, the signing of certificates and bills of exceptions makes them a part of the record as fully and completely as if copied at length on the order book and signed by the judge. Section 6252 provides that "any bill of exception so tendered to and signed by the judge   *   *   * shall be a part of the record in the case;" while section 6253 provides, *inter alia*, that the appellate court shall consider "any exception   *   *   * preserved of record in such cause by the certificate of the trial judge as provided in this section." This section prescribes a form of certificate to be used, which provides for the *time* of the signing of the certificate to be shown *in* the *certificate itself*.

In Burks Pleading & Practice (2d ed.), pp. 518-519, we find this: "The mere signature of the judge, without more, makes the bill as much a part of the record as if it were copied *in extenso* on the order book and his signature affixed thereto, but in order to have this effect it must in some way appear that this official act was done within the time prescribed. Just how this shall be made to appear from the record is not stated, but as the statute declares the bill to be a part of the record, if the bill itself is dated, the date will no doubt be taken as correct, and this would seem to answer the requirements of the statute.   *   *   * Certificates of exceptions should simply be correctly dated and signed by the judge in the manner shown by the forms given in the law itself."

"When other order book entries made by the clerk are in conflict with the bill of exceptions, the latter will control." *Johnson* v. *Staley*, 32 Ind. App. 630, 70 N. E. 542.

"The point is made on behalf of the appellee that the bill of exceptions is not properly in the record. This

proposition rests on the fact that the journal entry shows that the trial was had, and the motion for a new trial overruled, on the second day of April, 1885, while the certificate of the judge to the bill of exceptions shows that the bill was signed on the twenty-sixth of March, 1885. This would make it appear that the bill was signed some six or seven days before the trial occurred. It is said that the bill of exceptions must, therefore be disregarded. It must be assumed, of course, that the events recited in the bill of exceptions occurred before the bill was prepared and signed, and that an error has been committed as to the order of events, either on the journal entry of the clerk, or the certificate of the judge. Where there is a discrepancy in dates concerning the order of events between the journal entries of the clerk and the recitals in a bill of exceptions, the latter must control." *Indiana B. & W. Ry. Co.* v. *Adams*, 112 Ind. 303, 14 N. E. 81.

[3] While it is entirely proper to have the court or judge enter an order showing that the certificates or bills of exceptions have been tendered to and signed by the judge, the statutes now in force do not require that this be done. All that is necessary is for it to appear from the order book, or the certificate or bill of exception, that the date on which the judge affixed his signature thereto was within the time prescribed by law. And where there is a conflict between the dates, the date mentioned in the certificate as to the time it was presented to the judge and signed by him is conclusive over the date stated in the court order.

The certificates having been signed by the judge within the time required by law, the motion to dismiss is without merit.

The uncontroverted facts are these:

Virginia Hardwood Lumber Company, a corporation, was engaged in cutting and manufacturing lumber at South Clinchfield, Virginia, and A. P. Hopkins was its superintendent.

T. B. Hughes was engaged in the business of buying and wrecking and selling machinery, with a warehouse and principal business at Chattanooga, Tennessee. While there he stayed at the Ford hotel. He was also interested in similar businesses at Knoxville, Tennessee, and Birmingham, Alabama.

Virginia Hardwood Lumber Company installed its plant in the fall of 1920 and decided to purchase a second-hand steam feed for its saw mill outfit. Hopkins went to Knoxville to see the White Oak Corporation, which was also engaged in selling second-hand machinery for lumber mills. Not having a steam feed on hand, representatives of the White Oak Corporation accompanied Hopkins to Chattanooga to see the machinery Hughes had. Hughes showed him an eight inch feed which he priced to Hopkins at $450.00. No contract for the purchase was entered into. Hopkins returned home and made an effort to locate a ten inch feed in Virginia. Being unable to do so, on November 4, 1920, Hopkins addressed a letter to T. B. Hughes, care Ford hotel, Chattanooga, Tennessee, the pertinent part of which reads as follows: "I want your feed and am under the impression that White Oak Corporation has it, if not you can ship it to us at once and draw on us through the Dickerson County Bank, Clintwood, Virginia. Now from what I remember of the conversation we are glad to get feed complete, which takes in the valves, carriage, hanger and saw lever, you said, I believe, you would throw in the pipe, for $450.00." On the same day

Hopkins wrote the White Oak Corporation, which he understood had this steam feed listed for sale, saying: "If you have not disposed of it, please have him ship it *at once.* I am also writing him." (Hughes.) When this letter reached Chattanooga, on November 5, 1920, Hughes was in Birmingham, Alabama. On November 6, 1920, White Oak Corporation replied to the letter of November 4th, saying they had written Hughes also relative to the steam feed but had not heard from him; that they were under the impression that the feed was still available, in which case would ship immediately; and that they would advise further as soon as they heard from Hughes.

Hughes had men working for him at his warehouse in Chattanooga, but had no one to take charge of his mail or answer letters. After his arrival in Chattanooga he wrote the defendant a postal card, dated November 14th, and postmarked November 16th, advising that he had not shipped the steam feed because of his absence from Chattanooga, but would ship promptly thereafter. He shipped it on November 20th, after he had been-notified not to ship it.

The defendant alleges six assignments of error. We shall consider only one: The refusal of the court to set aside the verdict of the jury as contrary to the law and the evidence, and without evidence to support it.

It is admitted by the plaintiff that the letter of November 4, 1920, was the only offer ever made by the defendant to him to purchase the steam feed in question and that he shipped it on this letter. It will be observed that the letter informed Hughes that they would take the feed if shipped *at once.* Pursuant to Hughes's instructions the letter was addressed to him, care Ford hotel, Chattanooga, Tennessee. Having heard nothing from him, on November 15, 1920, the

defendant telegraphed White Oak Corporation to notify Hughes not to ship the steam feed. The White Oak Corporation notified Hughes on the same day, as requested, but Hughes disregarded this notification and shipped the steam feed on the 20th of November, 1920. The defendant refused to accept it.

The question to be decided is, does the evidence show that there was a legal and binding contract between the plaintiff and the defendant?

[4] The provision to ship "at once" did not mean a simultaneous shipment with the receipt of the order, but it meant a prompt and an immediate shipment of the steam feed.

An order for a gasoline tank to be shipped "at once," denotes a prompt and immediate shipment of the tank, and the failure of the seller to ship within ten days warrants rescission by the buyer. *Bowser* v. *Atkinson,* 161 Mo. App. 450, 143 S. W. 75.

[5] In *Gibney & Co.* v. *Arlington Brewing Co.*, 112 Va. 120-121, 70 S. E. 487, the law is stated thus:

"In 9 Cyc., p. 265, the law is stated as follows: 'The offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters, which it may please him to insert in and make a part thereof, and the acceptance to conclude the agreement must in every respect meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with these just as they stand.' At pages 267-8 it is said: 'An acceptance to be effectual must be identical with the offer and unconditional. Where a person offers to do a definite thing and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is a

counter proposal, and in neither case is there an agreement. This is true, for example, where an acceptance varies from the offer as to time of performance, place of performance, price, quantity, quality, etc.' "

[6] An offer to sell goods sent by the mail in the usual course of business, without expressly requiring an answer by return mail, must generally be accepted by the mail leaving during business hours on the day the offer is received, although not necessarily by the next post. 13 C. J., p. 301.

"Where an individual makes an offer by post, stipulating for or by the nature of the business having the right to expect an answer by return of post, the offer can endure only for a limited time, and the making of it is accompanied by an implied stipulation that the answer shall be sent by return of post. If that implied stipulation is not satisfied, the person making the offer is released." Ruling Case Law, "Contracts," p. 611. *Maclay* v. *Harvey*, 90 Ill. 525, 32 Am. Rep., p. 35.

[7] If an offer is rejected either by an absolute refusal, or by an acceptance conditionally, or *not identical with the terms of the offer*, or by a counter proposal, the party making the original offer is relieved from liability on that offer, and the party who has rejected the offer cannot afterwards, at his own option, convert the same offer into an agreement by a subsequent acceptance. For that purpose he must have the renewed consent of the person who made the offer. 13 C. J., p. 296.

[8] Under the principles of law governing the acceptance of an offer, *supra*, the (plaintiff, in order to effectuate a binding contract, had to notify the defendant of his acceptance of its order and ship promptly. This the plaintiff failed to do.

There was never any binding contract between the defendant and the plaintiff and there is no liability on the defendant for refusing to accept the steam feed in question.

[9] If the contract were made by the parties, still the plaintiff cannot recover, since he admits that he was notified not to ship the steam feed before he shipped it. It was his duty, under the circumstances, to accept the situation and terminate all relations and sue for the breach and prove his damages. 8 R. C. L., sec. 388, p. 1022; *Rowland Lumber Co.* v. *Ross*, 100 Va. pp. 281-282, 40 S. E. 922; *Dillon* v. *Anderson*, 43 N. Y. 231.

[10] There is no evidence to prove that he could not have sold the steam feed in Chattanooga or elsewhere for as much as he claimed the defendant had offered, or that he would have been damaged one penny if he had not shipped it to the defendant. Damages cannot be recovered where none are proven.

The judgment will be reversed and final judgment entered here for the defendant.

*Reversed and final judgment.*