# Richmond.

## Montauk Ice Cream Company, Incorporated, v. The Daigger Company.

### February 26, 1925.

1. Sales—*Damages—Minimizing Damages—Action by Seller for Purchase Price.*—If an action by the seller against the purchaser is altogether on a contract of sale for the purchase money, and not an action sounding in damages for violation of the contract to purchase, then the question of minimizing damages does not arise.

2. Sales—*Action by Seller for Purchase Price—Whether Action for Purchase Price or for Damages or Breach of Contract.*—Where, in an action by seller against purchaser, the notice of motion for judgment manifestly was intended to state a claim by the plaintiff for a specific sum of money due from the defendant upon a contract of sale between the parties for merchandise delivered in accordance with the terms of the contract, and the proceedings before the trial court show that the case was conducted by both sides entirely upon this theory, and that the judgment of the court was rendered for the purchase money claimed, the action is one for purchase money, and not an action sounding in damages for violation of the contract to purchase.

3. Sales—*Action by Seller—Action for Damages or for Purchase Price—Case at Bar.*—In the instant case a contract of sale was made between the parties whereby the plaintiff agreed to sell and defendant to buy the goods in question. The plaintiff agreed to ship the goods from Chicago to Norfolk, f. o. b. Norfolk. The terms of payment were five per cent. off for payment in ten days, otherwise on thirty days time from the shipment. The goods were to be shipped in three installments. The evidence plainly showed that the defendant, without any reasonable excuse, violated the conditions of the contract of sale by repudiating it after the receipt of the first shipment and refusing to receive the other two shipments if shipped. Plaintiff then held the last two shipments in their warehouse for defendant and brought suit for the purchase money.

   *Held:* That the contract was executory and that plaintiff could not sue for a recovery of the purchase money, but was limited to an action for damages.

4. Sales—*Executory Contract—Goods to be Delivered in Future.*—A contract for sale of property by one to another, to be delivered in the future,

and to be paid for within a stated time after delivery, without any additional conditions which could change the executory feature of the contract, is an executory contract.

5. SALES—*When Title Passes—Seller Setting Apart Goods in His Own Warehouse—Case at Bar.*—In the instant case, an action by seller against buyer for the purchase price of goods, plaintiff claimed that, after notification from the buyer that he would not accept the goods if shipped, he had a right, the goods having been brought into existence, to set them apart in his own warehouse and thus pass title to the buyer, so that he, the seller, could be in a position to sue for the purchase money.

*Held:* That the title to the goods had not passed.

6. SALES—*Executory Contract—Breach of Contract by Buyer—Action by Seller.*—Where a buyer breaches an executory contract of sale by refusing to allow the goods to be shipped, accompanied by the statement that he will not accept them, or by refusing to accept the goods after they are shipped, the buyer becomes responsible to the seller for the damages suffered by the seller by reason of the breach of the contract.

7. SALES—*Executory Contract—When Title Passes—Intention.*—So long as the contract remains executory, the seller cannot force the title upon the buyer when the intention is plain from the contract itself that the title or ownership was not to pass to the buyer until some action was performed, such as delivery either at the point of shipment or at the point of destination.

8. SALES—*Executory Contract—When Title Passes—Case at Bar.*—In the instant case a manufacturer in Chicago, engaged in the business of preparing and putting upon the market the preparation mentioned in the evidence, made an executory contract of sale with the purchaser in Norfolk for the future delivery to him of a definite quantity of the article manufactured by the seller. Before complete delivery was made, the purchaser repudiated the contract and notified the manufacturer not to ship, and, if he did, he, the purchaser, would not accept. The agreement of the manufacturer was that he was to transport the goods to Norfolk and deliver them to the purchaser at Norfolk f. o. b.

*Held:* That no title could pass to the purchaser until the conditions of the contract requiring transportation and delivery at Norfolk had been complied with.

9. SALES—*Breach of Contract—Remedy of Seller—Where Title has Passed.*— The general rule of law is that when the title, whether by reason of an executed contract, or under a completed executory contract, has passed to the purchaser and the purchaser has breached his contract, then the seller has the option of either suing for the purchase money or retaining the goods as his own and suing for damages.

10. Sales—*Breach of Contract—Remedy of Seller—Where Title has not Passed.*—Where there is not a simple contract of actual bargain and sale executed between the parties, but an executory contract evidencing the intention of the parties as to the time when the title and ownership to the property is to pass to the purchaser, then in the event of a breach of the contract by the purchaser before the existence of the conditions essential for the ownership to pass, the seller is limited to his action for damages, and cannot sue for the purchase price.

11. Sales—*Action by Seller—Reversal of Judgment for Purchase Price where Title had not Passed to Buyer—Appeal and Error—Judgment by Appellate Court—Case at Bar.*—In an action by a seller for the purchase price of goods, where it appeared that title to the goods had not passed at the date of the breach of the contract, the judgment of the lower court by which the plaintiff is given the right to recover the full amount of the purchase money cannot be sustained, and inasmuch as there was no evidence in the record showing any damage to the plaintiff, the Supreme Court of Appeals could only reverse the judgment and enter final judgment for the defendant, notwithstanding that the evidence showed apparently an unjustifiable violation of the contract on the part of the defendant.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Tomlin & Maupin*, for the plaintiff in error.

*Swink & Fentress*, for the defendant in error.

Crump, P., delivered the opinion of the court.

This is an action by notice of motion instituted in the lower court by the defendant in error against the plaintiff in error. The notice of motion was as follows:

## "*Notice of Motion.*

"To the Montauk Ice Cream Company, Inc., a corporation:

"Take notice that the undersigned, the Daigger Company, a corporation, duly organized and existing, successor of A. Daigger & Company, will, on Monday, the 12th day of March, 1923, between the hours of 10 A. M. and 2 P. M. of that day, or as soon thereafter as it can be heard, move the Court of Law and Chancery for the city of Norfolk, Virginia, in the court room of said court, for a judgment in its favor and against you, for the sum of $504.00 with interest thereon from the 3rd day of September, 1921, until paid, together with the cost herein expended.

"Said sum is due to the undersigned for merchandise sold and delivered to you in accordance with your contract dated August 3, 1921, a copy of which is hereto attached as a part hereof and as will appear by itemized statement attached hereto as a part hereof."

Upon the trial of the case a jury was waived, and the evidence having been heard by the judge of the trial court, he rendered judgment in favor of the plaintiff for the sum claimed—$504.00—with interest from the third day of September, 1921, until paid.

In the petition for the writ of error only two assignments of error are made, which are as follows:

"First: That the plaintiff's cause of action, as shown by its pleading, was for the purchase price of merchandise alleged to have been sold and delivered by the plaintiff to the defendant; whereas, as proved by the plaintiff's own evidence, said merchandise had been refused by the defendant, had never been delivered, and never left the possession of the plaintiff.

"Second: Although the defendant refused to take

the merchandise, the plaintiff did nothing to mitigate the loss for which it seeks to hold the defendant liable."

[1, 2] These two assignments of error present the same question for consideration by this court, as it follows that if the action was by the seller against the purchaser altogether on a contract of sale for purchase money, and not an action sounding in damages for violation of the contract to purchase, then the question of minimizing the damages does not arise. The notice of motion for judgment manifestly was intended to state a claim by the plaintiff for a specific sum of money due from the defendant upon a contract of sale between the parties, for merchandise delivered in accordance with the terms of the contract; and the proceedings before the trial court show that the case was conducted by both sides entirely upon this theory, and that the judgment of the court was rendered for the purchase money claimed.

The evidence for the Daigger Company, the plaintiff corporation in the lower court, was in the form of depositions, with the correspondence between the parties and other exhibits attached. For the Montauk Ice Cream Company, Inc., the defendant in the trial court, two witnesses testified briefly, viz: J. M. Fentress, the president of the defendant company, and S. W. Coddington, who worked for the company in manufacturing ice cream.

It appears from the testimony that in August, 1921, the defendant company gave the plaintiff company a written order for three barrels of 300 pounds each, aggregating 900 pounds, of an article known as "Washburn's" f. o. b. Norfolk, Virginia, shipped in twenty-pound containers, which was promptly acknowledged and accepted by the plaintiff. The merchandise ordered was a preparation manufactured by the plaintiff to be

used in making ice cream, the defendant being a company engaged in the ice cream business in the city of Norfolk. The order specified that the preparation was to be forwarded in three separate shipments of 300 pounds each, the first shipment to be on September 1, 1921, the second January 1, 1922, and the third June 1, 1922. In execution of the contract the first shipment was made about September 1, 1921, received by the defendant and paid for. On December 12th of that year the defendant wrote plaintiff requesting that the second shipment be withheld until they gave notice when to ship. The plaintiff replied that they had "marked the contract" so that this shipment should be made later in the season, but on or before December 1, 1922, the defendant to give notice when they desired the shipment to be made. Other correspondence followed, in which the defendant stated it had not used any of the preparation, and on March 9th they wrote: "This was due to a quantity of similar goods we had on hand. If you will be patient and allow us to advise you, there will be no need of any further correspondence on the subject." No notice fixing a time for the unshipped portion of the order to be sent to them having been given by the defendant, the plaintiff, on November 9, 1922, wrote, referring to their former letter agreeing to defer shipment, that "we are forwarding you on December 1st remainder of your Washburn's contract consisting of two barrels of 300 pounds each." The defendant replied on November 15th, stating: "As to the contract you spoke of, we will not be able to handle these goods. We have on hand a part of the first shipment you made and are trying hard to get it off our hands. Under our law we are not permitted to use anything in the way of a stabilizer. We are permitted to use four ounces of gelatine to ten gallons of

finished product." The manager of the plaintiff company, who gave the deposition, testified that Washburn's was in general use in all parts of the country in the manufacture of ice cream, that he had been selling it to other ice cream dealers in Virginia and had never had any complaint in reference to it. His evidence was also that upon receipt of the letter first mentioned, he took up the matter mentioned in it with the Dairy and Food Commission of Virginia. He testified that his preparation was not a stabilizer and was not so considered by the Virginia official; and that the latter saw nothing in its composition to forbid its use in Virginia, and this seems to be warranted as the result of his correspondence with the Dairy and Food Commissioner, which is filed with the deposition. The communications between the plaintiff company and the Virginia Commissioner occurred in the period from December 1st to December 9th.

In the meantime the plaintiff wrote the defendant, in a letter of November 18th, as follows: "In further reference to Washburn's we wish to advise you that Washburn's is not in any way a stabilizer and therefore does not fall under your State law governing the use and amount of material as stabilizers...............Accordingly we are compelled to advise you that we will make shipment of the balance of your contract on December 1st as per the terms of the contract. We regret very much that we cannot allow you any further extension of time." To this letter the defendant replied, under date of November 27th, that "we regret very much under the circumstances that we cannot accept the shipment of which you refer to in yours of the 18th inst. We still have on hand the principal part of the last shipment received from you. We are better acquainted with the State laws than you are, and wish to say that

when this order was given it was done so in the best of faith, but since then we find we will be unable to use same. If you make this shipment you will do so at your own expense." The plaintiff then writes the defendant company, on December 18th, advising it of the inquiries the plaintiff had made of the Virginia Dairy and Food Commissioner and that the latter had ruled that Washburn's ice cream improver "conformed to all the regulations and laws" of Virginia, and in closing the letter adds: "Inasmuch as there is no question but that the excuse given in your letter of November 27th is groundless, we desire to serve you notice herewith that if within thirty days from this date you do not give us shipping instructions for the balance of your contract which we have, signed by yourself, and dated August 3, 1921, we shall, without any further notice, turn the whole matter over to our attorneys for suit." Not receiving any reply to this, the plaintiff wrote accordingly on January 8, 1923: "We are enclosing invoice for 600-lb. Washburn's Improver at $.84 per pound, amounting to $504.00 as per your contract signed August 3, 1921. This material is being held subject to your shipping instructions, and we would ask you to furnish us shipping instructions by return mail." In reply to this defendant wrote, on January 11th: "In reply to yours of the 8th inst., we have some of your improver on hand and would be glad to ship same back to you, we standing the loss. We cannot use, and will not receive the shipment you refer to, we are enclosing the invoice, and if you want to bring suit, go to it. We feel, however, that your attitude in this matter is one in which you will not be benefited."

For the defendant, the president of the company testified that he signed the contract, and received the first shipment and paid for it; he did not know when

they tested the improver but the result was not satisfactory; the improver did not dissolve, but left a deposit, and he had on hand the original shipment, except what was used in testing it out; that he made no complaint to the plaintiff as to the unsatisfactory result of his attempt to use the material, and he knew the material could not be used in the place of gelatine. The other witness for defendant stated that he came to work for the company in March, 1922; he used some of the Washburn's Improver but did not know whether any of it had been used prior to that time; the material used by him did not dissolve, but settled at the bottom of the tank, and the ice cream manufactured with the improver was sticky and unpleasant to the taste, and in his opinion this resulted from the use of the improver; he did not have any receipt for using the improver, and he told Mr. Fentress he could not make satisfactory use of the improver in his cream.

With reference to the disposition of the remaining 600 pounds as to which the defendant had declined to give shipping instructions, and had breached their contract by the statement that they would not accept the goods if shipped, the witness for the plaintiff testified as follows:

"Q. What are you doing with this 600 pounds of 'Washburn's?'

"A. We are holding it in our warehouse for the Montauk Ice Cream Company, and are ready to send and deliver it to them at any time that we receive instructions and payment therefor.

"Q. Is this 600 pounds in the same condition that it was when ordered?

"A. It is in the same original packages. It has not been touched, and diligence has been used to carefully preserve it and protect it. It is in the same condition,

subject, of course, to the changes that go on owing to time."

[3] We have made quite a full statement of the evidence upon which the learned judge of the lower court acted, as the case was submitted to the court without a jury. The evidence shows that a contract was made between the parties whereby the plaintiff company in Chicago and the defendant company in Norfolk made a contract for the sale of the goods mentioned. The plaintiff corporation agreed to ship the goods from Chicago to Norfolk, the goods were to be shipped to the defendant f. o. b. Norfolk, the terms being five per cent off for payment in ten days, otherwise on thirty days time from the shipment. The goods could be shipped, as already stated, in three instalments, on September 1, 1921, January 1 and June 1, 1922. The evidence plainly shows that the defendant without any reasonable excuse violated the conditions of the contract of sale by repudiating it, and refusing to receive the goods if shipped.

Under the circumstances of this case, can the plaintiff sue for a recovery of the purchase money, or is its remedy limited to an action for damages?

[4] The answer to this question depends upon whether or not the contract of sale was executory, and when the title to the goods passed to the defendant. The contract itself is plainly executory in character. It is an ordinary agreement for sale of property by one to another, to be delivered in the future and to be paid for within a stated time after delivery, without any additional conditions which could change the executory feature of the contract.

In the case of *Ellis* v. *Hubbard*, 123 Va. 481, 96 S. E. 754, it was held that to convert an executory contract into a perfected bargain and sale so as to pass title to

the vendee, it was essential that the subject of the contract, where it was not in existence at the time the contract was made, should be brought into existence and, further, that there should be a performance on the part of the seller of other conditions precedent to the passing of the property or title. The contract in that case was not only in writing but a formal contract of considerable length, fixing the terms and conditions under which the title was to pass.

In the opinion the general principle is stated that the time for the passing of title on a sale of personal property is to be ascertained from the intention of the parties as evinced by the language of the contract and the circumstances under which it was made.

[5, 6] The position of the plaintiff in this case is that after notification from the buyer that he would not accept the goods if shipped, the seller had a right, the goods then having been brought into existence, to set them apart in his own warehouse and thus pass title to the buyer, so that the seller was in a position to sue for the purchase money. The seller here was a manufacturer of the preparation sold in this case with its place of business located in Chicago. The contract of sale looked to the future delivery by the seller to the purchaser at the city of Norfolk, the purchase money not to become due until after the goods were delivered at Norfolk. Under the circumstances it is well settled that where the buyer breaches the contract by refusing to allow the goods to be shipped, accompanied by the statement that he will not accept them, or by refusing to accept the goods after they are shipped, the buyer becomes responsible to the seller for the damages suffered by the seller by reason the breach of the contract. Whether, in addition to the remedy for damages, the seller can also maintain an action for the

price is one upon which there is some difference of authority. The general rule is otherwise. Thus in a note at page 1231 of 27 A. L. R., it is stated that:

"By the weight of authority, where an executory contract of sale is repudiated by the buyer at a time prior to the delivery of the goods by the seller to the carrier for transportation to the buyer, the seller cannot pass title to the goods by making delivery to the carrier so as to entitle him to maintain an action to recover the purchase price." Citing various authorities.

In 1 Williston on Sales, (2nd ed.), section 263, the author, in giving the rules in the uniform sales act for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer, names one as follows:

"Rule 5. If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

With reference to this rule the same author says, at section 280:

"This rule states the doctrine of the common law. It is based upon a theory analagous to that supporting rule 2, of section 19, something further remains to be done by the seller not, indeed, to put the goods in a deliverable state, but in order to carry out the bargain. And the duty of the seller to transport the goods to the place of delivery is not, as is ordinarily the case with the duty of the seller to deliver, conditioned upon the concurrent payment of the price, or dependent on the duty of the buyer to come for the goods. Where the seller contracts to deliver the goods at the buyer's residence, or at any other particular place, it is the

seller's duty to go forward unconditionally with the transportation of the goods to that place. Until he has done that, presumably the property is not intended to pass."

He further says: "If the contract specifies that one party or the other is to pay the freight, this tends to prove the intention of the parties in regard to the matter. If the buyer is to pay the freight, it is a reasonable supposition that he does so because the goods become his at the point of shipment and the carrier is an agent in transporting them. On the other hand, if the seller is to pay the freight, the inference is equally strong that the duty of the seller is to have the goods transported to their ultimate destination, and that the carrier is his agent in transporting the goods."

See also *Acme Food Co.* v. *Older*, 64 W. Va. 255, 61 S. E. 235, also in 17 L. R. A. (N. S.), 807.

[7] So long as the contract remains executory, the seller cannot force the title upon the buyer when the intention is plain from the contract itself that the title or ownership was not to pass to the buyer until some action was performed, such as delivery either at the point of shipment or at the point of destination. The contract in the instant case remained at all times executory, and a notice from the defendant that it would not receive the goods was given while the contract remained unexecuted and the rights of the parties arose at that time.

In the recent case of *Virginia Hardwood Lumber Co.* v. *Hughes*, 140 Va. 249, 124 S. E. 283, suit was brought for the purchase price of lumber sold by one party to the other, under circumstances somewhat similar to the instant case, the purchaser having given notice not to ship and the seller having nevertheless shipped the goods to the purchaser. The main question in the case

was whether or not a binding contract had been made. In concluding the opinion the court says:

"If the contract were made by the parties, still the plaintiff cannot recover, since he admits he was notified not to ship the steam feed. It was his duty under the circumstances to accept the situation and terminate all relations and sue for the breach and prove his damages (citing authorities). There is no evidence to prove that he could not have sold the steam feed in Chattanooga, or elsewhere, for as much as he claimed the defendant had ordered, or that he would have been damaged one penny if he had not shipped it to the defendant. Damages cannot be recovered where none are proven."

The case of *Colt* v. *Elam*, 138 Va. 124, 120 S. E. 857, was also a case in which the plaintiff brought suit for the purchase money under an order accepted by the plaintiff for a gas and lighting plant manufactured by it. The defendant had canceled the order. One question in the case was whether the order had been countermanded before it was accepted at the home office of the plaintiff. With reference to the remedy of the plaintiff the court says:

"The offer was to purchase no specific gas generating and lighting plant, but one of a certain model, and the title could not pass to the purchaser until the outfit was selected and loaded on board the cars on December 31, 1918. The purchaser had the right to countermand and cancel the order at any time before its acceptance at the home office of the company. He had the right also, at any time before the title passed, even though the offer was accepted before notice of cancellation, to breach the contract by refusing to accept the goods.

"Such latter action on the purchaser's part would not deprive the seller of the right to sue for the damages

sustained by the breach of the contract, but the company could not afterwards ship the goods and sue for the purchase money.

"The plaintiff in his petition states the law thus: 'If there was a contract, we will admit that upon receipt of the notice of cancellation before the shipment that a duty devolved upon plaintiff to minimize his damages, and that he could not thereafter ship the plant and claim from the defendant the purchase price thereof, but he could have recovered damages for the breach of contract.' "

In the case of *Geoghegan Sons and Co.* v. *Arbuckle Bros.*, 139 Va. 92, 123 S. E. 387, a sale of sugar was made f. o. b. New York. The sugar was shipped to the purchasers at Chase City, Virginia, the freight paid and it was unloaded and the purchaser refused to finally accept the goods, and the seller brought suit for the purchase money. The purchasers claimed that there had been delay by the railroad in transporting the sugar, and also that the exact quantity of sugar purchased by him had not been so segregated as to pass the title or property, since that sugar was shipped in a car to Richmond containing sugar of similar character to other parties, and the defendants' sugar had then been shipped to them at Chase City. The court held that under the terms of the contract—f. o. b. New York— the title passed to the purchaser upon delivery to the carrier at New York, and also that the shipment of the defendants' sugar in a car with sugar for other parties did not violate any rule of law, especially as it appeared that shipments could not be obtained at all except in car load lots. This case is not in conflict with other cases, as the reading of all the facts discloses unquestionably that the title had passed to the purchaser.

The general doctrine is also stated in the case of

*Am. Hide, etc., Co.* v. *Chalkley,* 101 Va. 458, 44 S. E. 705, as follows:

"The doctrine is that where a contract of sale is executory and the title and possession still remain in the seller, his remedy against the buyer who wrongfully refuses to accept and pay for the goods is an action of assumpsit on a special count to recover damages for the breach of the contract. It is said that the seller cannot maintain an action for the agreed price, as he could do if the title had passed, but must sue for indemnity for the loss of a bargain; the *quantum* of damages which he has sustained and the measure of his recovery being the difference between the contract price of the goods and the net price which they produced at a resale fairly held, after deducting the expenses incurred by the seller in taking care of the goods and selling them."

The court in the case of *Rosenbaum* v. *Weeden,* 18 Gratt. (59 Va.), 785, 98 Am. Dec. 737, relied upon by the defendant in error, states, on page 790, that when a vendee of goods refused to accept them when tendered according to the contract of sale, the vendor may elect to rescind the contract and keep or dispose of the goods for his own use, or let the contract remain in force and hold the vendee liable for the price of the goods, and the court adds:

"If he elects to let the contract remain in full force, he may either bring his action for the price of the goods when it is due and payable, or he may sell the goods, apply the net proceeds of sale to the credit of the vendee on account of the money due by him, and bring an action against him to recover the balance."

In this case the seller had delivered the goods to the buyer and the buyer had accepted them. The buyer then returned the goods to the seller, claiming that they

were not of the character bought by him. It is manifest that if the plaintiff could say that the goods did correspond with the goods actually sold, then the title and property had passed to the buyer and the language used by the court therefore must be taken as applicable to the case in which the contract was not executory, but had been executed and the title and ownership of the property had passed from the seller to the purchaser.

The case of *James River Lumber Company* v. *Smith Bros.*, 135 Va. 406, 116 S. E. 241, is cited by the defendant in error as authority for the position that the title had passed in the instant case, and the purchaser could be sued for purchase money. That case was an action for damages against the buyer for breach of contract, and not for recovery of purchase money as such. It was, therefore, not material to the case whether, or not, the title or property of the goods had actually passed to the purchaser. The court there said that the general rule is that the measure of damage for the breach of a contract of sale of personal property by the buyer is the difference between the contract price and the market price at the time and place of delivery. The time for delivery fixed by the contract had been extended by consent of the parties and the question arose whether the market price should be the price at the time of delivery as contemplated in the contract, or at the time as extended by the consent of the parties, and in connection with the discussion of this matter, the court says:

"Where the defendant waives the time limit stated in the contract, or is solely responsible for the delay, the general rule does not apply, and in such case the plaintiff, until notified that the defendant proposes to breach the contract in some more vital way, has a right to hold the goods subject to the order of the defendant,

and when so notified the plaintiff has the option of
treating the goods as the property of the defendant and
suing him for the whole of the contract price, or of
retaining the goods as his own and suing for the differ-
ence between the contract price and the market price
at the time of bringing the suit."

The court is there stating incidentally the general
principle of law, and it must be taken that what is said
as to the right of the seller to hold the goods and sue for
the purchase money is in harmony with the recent cases
above recited, and was intended as a statement of the
law applicable to the case in which the title or ownership
of the goods had passed to the purchaser.

In *Pleasants* v. *Pendleton*, 6 Rand. (27 Va.), 473, 18
Am. Dec. 726, which is also cited by the defendant in
error, it was held, as stated in the syllabus, that a con-
structive delivery is sufficient to pass the right of prop-
erty, and actual delivery either in fact or law is not
necessary. This ruling was made, however, with refer-
ence to a contract of sale which the court held to be
complete and executed, and no longer executory. The
contract, as briefly stated in the syllabus, was as follows:

"One merchant sells to another 119 barrels of fine
flour lying in a certain warehouse; the barrels have on
them the brands of eight different mills; the price is
agreed on; the vendee gives a check on the bank for the
agreed price for the whole quantity; the vendor gives
at the same time to the vendee a bill of parcels certifying
the number of barrels of each particular brand, and an
order on the warehouseman for the flour, and a receipt
in full for the price of the flour. This is a complete and
executed contract and the property in the flour was
passed to the vendee. The warehouse and all its con-
tents, including the flour and the check, with other
papers of the vendor, being burned the next morning

before the actual delivery of the flour, the loss is the vendee's and the vendor may recover the price."

This was not a case of an executory contract of sale, but it was an actual bargain and sale between the parties *in praesenti*, and the title to the property right in the goods passed at once to the purchaser and was not dependent upon actual delivery.

The defendant in error also refers the court to *Pate* v. *Ralston*, 158 Iowa, 411, 139 N. W. 906, 51 L. R. A. (N. S.), 735, and note thereto. In the note are several cases seemingly in conflict with the principles adopted in Virginia and West Virginia. Many of these cases are reviewed in the West Virginia case of *Acme Food Co.* v. *Older, supra.*

[8, 10] In the instant case a manufacturer in Chicago, engaged in the business of preparing and putting upon the market the preparation mentioned in the evidence, made an executory contract of sale with the purchaser in Norfolk for the future delivery to him of a definite quantity of the article manufactured by the seller. Before complete delivery was made the purchaser repudiated the contract and notified the manufacturer not to ship, and if he did, he, the purchaser, would not accept. The agreement of the manufacturer was that he was to transport the goods to Norfolk and deliver them to the purchaser at Norfolk f. o. b. No title could pass to the purchaser until the conditions of the contract requiring transportation and delivery at Norfolk had been complied with. If it could be held that the property while in the warehouse of the plaintiff, or in the possession of the carrier, belonged to the defendant, then the loss in the case of accidental destruction would fall upon the defendant, and that certainly could not be the result under the circumstances of a case such as this. The general rule of law is that al-

though the title, whether by reason of an executed contract or under a completed executory contract, has passed to the purchaser and the purchaser breached his contract, then the seller has the option of either suing for the purchase money or retaining the goods as his own and suing for damages.   But where there is not a simple contract of actual bargain and sale executed between the parties, but an executory contract evidencing the intention of the parties as to the time when the title and ownership to the property is to pass to the purchaser, then in the event of a breach of the contract by the purchaser before the existence of the conditions essential for the ownership to pass, the seller is limited to his action for damages and cannot sue for the purchase price. These principles we take to be settled in Virginia.

[11] The evidence in the instant case does show apparently an unjustifiable violation of the contract on the part of the defendant.   We are of opinion, however, that the judgment of the lower court, by which the plaintiff is given the right to recover the full amount of the purchase money, cannot be sustained, and that inasmuch as there is no evidence in the record showing any damage to the plaintiff, this court can only reverse the judgment and enter final judgment here for the defendant, as was done in *Virginia Hardwood Lumber Co.* v. *Hughes, supra,* and an order to that effect will be entered.

*Reversed.*