11746

NORWOOD NATL. BANK v. HUTCHINGS-CRAIG CO.

(127 S. E., 605)

WAREHOUSEMEN—DIRECTED VERDICT FOR PAYEE OF NOTE SECURED BY PLEDGE OF WAREHOUSE RECEIPTS HELD IMPROPER.—Where defendant in action on note alleged that plaintiff bank had held certain warehouse receipts as security and had sold goods stored, and received proceeds in amount sufficient to pay note, it was error to direct

verdict for plaintiff on theory that orders of bank which warehouse had treated as authority for release and delivery of goods were wholly ineffective for that purpose; real issue being whether plaintiff bank had received proceeds of goods, regardless of whether release by warehouse was authorized or not.

Before TOWNSEND, J., Greenville, 1924. Reversed.

Action by the Norwood National Bank of Greenville against Hutchings-Craig Co. Judgment on a directed verdict for plaintiff and defendant appeals.

*Messrs. Dean, Cothran & Wyche* for appellant.

*Messrs. Haynsworth & Haynsworth,* for respondent, cite: *Salmon could be delivered only on production of receipts:* 3 Code, 1922, Sec. 3906.

April 13, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

In an action upon a note the trial Judge directed a verdict for the plaintiff. From judgment thereon the defendant appeals.

The defendant admitted the execution of the note, and alleged by way of counterclaim that it had pledged as collateral security for the payment of the note certain warehouse receipts, issued by the Manufacturing Warehouse Company, covering 800 cases of salmon; that the salmon covered by the receipts had been "ordered out" of the warehouse by the plaintiff bank without the knoweldge or consent of the defendant; that the proceeds of the sale of the salmon had been received by the plaintiff, but had not been applied as a credit upon defendant's note; and that the amount so received was more than enough to pay the note in full, etc.

Upon the trial below the contested issue of fact, upon which the Circuit Judge decided the case, was as to whether the salmon covered by the warehouse receipts held by the bank as collateral security to defendant's note had been "ordered out" of the warehouse by the bank. There was

evidence tending to establish that the salmon covered by the defendant's warehouse receipts in the hands of the bank had been delivered by the Warehouse Company upon orders, approved by the bank, but intended by it to apply to salmon covered by the warehouse receipts of a third party, another customer of the bank. The orders from, or approved by, the bank upon which the Warehouse Company acted were in writing, and the Circuit Judge, in the exercise of the Court's prerogative to construe written instruments, held that the orders relied upon by the Warehouse Company to authorize the release or delivery of the salmon covered by the warehouse receipts were wholly ineffective for that purpose; and that in delivering the salmon, upon these so-called orders, without the production of the receipts, the Warehouse Company had been guilty of a wrongful delivery, for the consequences of which the bank was in no wise legally liable to account to this defendant in this action upon the note.

In that conclusion we cannot concur. Irrespective of the validity of the premises upon which the conclusion was predicated—a point which it is not deemed necessary here to consider—the controlling issue was, not whether there had been a wrongful delivery by the Warehouse Company, nor whether the plaintiff bank had been guilty of actionable negligence in causing such misdelivery. The controlling issue under the pleadings and the evidentiary facts was whether the plaintiff bank had received money which was the property of the defendant and which it had no right, legal or equitable, to retain for any other purpose than that of application to the defendant's debt to the bank. There was evidence tending to establish that the property of the defendant, the salmon covered by the warehouse receipts, was converted into money and the money turned over to the bank, the holder and pledgee of the warehouse receipts; that such conversion of the property had resulted from the action of the Warehouse Company in releasing and delivering the property upon orders from the bank which the Warehouse Company claimed to interpret as authority for such delivery;

that the warehouseman's action in delivering, whether wrongful or not, resulted in merely placing in the bank's hands the money value of the defendant's property instead of keeping at its disposal in the warehouse the property itself; and that the defendant, the owner of the property, had not participated in the transaction to the prejudice of the bank by word or deed. If under the circumstances indicated the plaintiff bank received the proceeds of the property converted, it received money which belonged to the defendant; and the rights of the parties, upon defendant's counterclaim, are determinable in accordance with the principles which govern the action for money had and received. See generally *Ashe's Ex'rs v. Livingston's Ex'rs,* 2 Bay, 80, 85. *Buchannan v. Buchannan,* 4 Strob., 68. *Schweizer v. Weiber,* 6 Rich., 159. *Griffin v. Griffin,* 20 S. C., 486. *Drake v. Whaley,* 35 S. C., 187; 14 S. E., 397. *Madden v. Watts,* 59 S. C., 81, 86; 37 S. E., 209. *Link v. Barksdale,* 70 S. E., 487; 50 S. E., 189.

In that view of the case the verdict for plaintiff was improperly directed.

Judgment reversed.

Messrs. Justices Watts and Fraser concur.

Mr. Chief Justice Gary and Mr. Justice Cothran did not participate.