Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Richmond Trust Company v. Frances W. Christian, Executrix, etc, et als.

March 22, 1928.

Absent, Prentis, P., and Burks, J.

1. BANKS AND BANKING—*Taxation—Erroneous Assessment of Taxes Against Holders of Shares—Refund Belongs to Individual Shareholders.*—Money erroneously paid by a trust company to the city of Richmond in settlement of taxes assessed against the holders of shares of the capital stock of the company, and thereafter refunded to the company, belongs to the individual shareholders and not to the trust company.

2. BANKS AND BANKING—*Taxation—Erroneous Assessment of Taxes Against Holders of Shares—Refund Belongs to Individual Shareholders—Case at Bar.*—The ordinance of the city of Richmond approved April 9, 1915, in fixing the rate of taxation, states that it shall be a certain per centum of the value "on bank capital, surplus and undivided profits, less assessed value of real estate included in said capital and surplus and undivided profits." The ordinance further in express terms directed that the taxes upon the shares of stock in any bank should be both assessed and collected in accordance with the general State law.

   *Held:* That the intent and effect of the ordinance was only to require the tax to be assessed and collected upon the shares of stock as held by individual stockholders and in the manner prescribed in the general law of the State, and that it was not the intention of the city to levy a tax directly upon the property of the banks *in solido,* and that money erroneously paid in settlement of taxes to the city and afterwards refunded to a trust company belonged to the individual stockholders and not to the trust company.

3. BANKS AND BANKING—*Taxation—Erroneous Assessment of Taxes Against Holders of Shares—Refund Belongs to Individual Shareholders—Case at Bar.*—A review of the tax laws of Virginia under which the taxes for the years 1915, 1919 and 1920 were assessed against a trust company in the city of Richmond shows that the very object of these statutes was to refrain from laying any tax upon the capital or general

assets of the bank. For this reason the legislature directed that these institutions should report the value of the stockholding of each stockholder to the end that the tax apply to the outstanding stock certificate of each holder, with the same effect as if the requirement had been that the banks should make and transmit to their stockholders the property value of each holding and the amount of the tax, and that each stockholder should pay his own tax.

4. BANKS AND BANKING—*Taxation—Erroneous Assessment of Taxes Against Holders of Shares—Refund Belongs to Individual Shareholders.*—The tax legislation of Virginia, governing taxes for 1915, 1919 and 1920, provided that no tax was to be assessed upon the capital of any State or National bank or trust company, but that the shareholders should be assessed and taxed on their shares of stock, and the bank is directed to pay the tax assessed against its stockholders. In effect, the bank is required to pay the tax for and on behalf of the stockholders.

5. BANKS AND BANKING—*Taxation—Refund of Taxes Erroneously Assessed—Reimbursement of Stockholders.*—Under the Virginia statutes the report of the bank showing the name, and value of the stockholding of each stockholder, and amount of tax assessed against and to be paid for each, the aggregate amount of money when aggregated by the bank and paid to the city extinguished an indebtedness due by each stockholder, individually, and whatever method the bank might adopt for its reimbursement by each stockholder, the subsequent return of any portion of the money so paid must enure to the benefit of the stockholders proportionately. The right of the stockholders is not contingent upon the manner in which the bank undertook to account with its stockholders or to equalize tax payments among them.

6. BANKS AND BANKING—*Taxation—Right of Shareholders to Refund—Waiver by Shareholders—Case at Bar.*—The instant case was a suit by shareholders in a trust company to recover from the trust company taxes refunded to the trust company as erroneously assessed against the holders of the shares of the company. Plaintiffs signed a written agreement, giving authority to the trust company to sue on behalf of each stockholder individually. The agreement stated that the amount recovered would be "added to the assets of the bank." There was no evidence showing full knowledge of all the facts, on the part of the stockholder, and his intention to surrender the right to the return of the money to him either out of the assets of the bank or otherwise.

*Held:* That this agreement should not be allowed to operate as an estoppel against the stockholder to assert his right to the refund

tax, and did not constitute a waiver of the rights of the shareholders to have the refund of the taxes paid to them.

7. ESTOPPEL—*Waiver—Knowledge and Intent to Waive Right—Party Invoking Estoppel must have Acted to His Prejudice.*—A waiver, in order to operate as an estoppel, must arise from conduct evidencing both knowledge and intention to waive the right in question, and the party against whom an estoppel is sought must by his conduct have caused the party who invokes the estoppel to have acted to his prejudice.

8. BANKS AND BANKING—*Taxation—Erroneous Assessment of Taxes Against Holders of Shares—Refund Belongs to Individual Shareholders.*—Under the tax laws of Virginia in force in the years 1915, 1919 and 1920, all taxes, both State and local, assessed against shares of stock of a bank or trust company were imposed in the name of each and every stockholder of such bank or trust company, and upon the shares of the stock in such bank or trust company individually and separately owned respectively by such stockholders, and were not imposed upon the capital of such bank or trust company as a whole and as the property thereof.

9. BANKS AND BANKING—*Taxation—Bank Acts as Agent of the Stockholders.*—In making payment of taxes assessed against the shares of stock of a bank, as required by law, a bank or trust company acts as the agent of its respective stockholders for whom said taxes were paid, in the discharge of an indebtedness charged against said stockholders and not against such bank or trust company; and thereby all funds used for such purposes became earmarked as funds belonging to said stockholders.

10. BANKS AND BANKING—*Costs—Suit by Shareholders to Recover Refund of Taxes Erroneously Assessed and Collected Against Shares of Stock—Case at Bar.*—The instant case was a suit by shareholders in a trust company to recover from the trust company taxes refunded to the trust company as erroneously assessed against the holders of the shares of the company.

*Held:* That the shareholders were entitled to recover the refund but all of the persons entitled to the fund were liable to pay therefrom proportionately the costs, counsel fees and other expenses of the litigation.

11. BANKS AND BANKING—*Suit by Shareholders to Recover Refund of Taxes Erroneously Assessed and Collected Against Shares of Stock—Interest on Refund—Counsel Fees—Case at Bar.*—The instant case was a suit by shareholders in a trust company to recover from the trust company taxes refunded to the trust company as erroneously assessed against the holders of the shares of the company. The stockholders were held to be entitled to the refund and 3% interest on the refund was

charged against the bank, and counsel for complainants were held entitled to a fee upon a percentage of the entire net sum in the possession of the defendant.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Hunton, Williams, Anderson & Gay* and *Edmund M. Preston,* for the appellant.

*Andrew D. Christian, A. B. Dickinson* and *Henry C. Riely,* for the appellees.

WEST, J., delivered the opinion of the court.

[1] The major question involved in this case is: Does money erroneously paid by the Richmond Trust Company to the city of Richmond in settlement of taxes assessed against the holders of shares of the capital stock of the company, and thereafter refunded to the company, belong to the individual shareholders or to the Trust Company?

In 1915, 1919 and 1920, pursuant to the provisions of section 17 of the tax bill, the defendant, Richmond Trust Company, located at Richmond, Virginia, reported to the commissioner of the revenue of the city of Richmond the names and residences of its stockholders and the number and value of the shares of stock held by them, respectively, as of February first in each of said years. The commissioner of the revenue assessed each stockholder with State taxes on stock

held by him, and also (with certain exceptions hereafter referred to) with city taxes on said stock. Both State and city taxes assessed against the stockholders were paid by the Trust Company.

In 1919 and 1920 the Trust Company paid to the city of Richmond the taxes on such stock at the rate of $1.25 per hundred of its assessed value; and in 1915 the payment was at the rate of $1.40 per hundred dollars of its assessed value. The payment of city taxes in 1915 was made under a city ordinance of April 9, 1915, which provided that the city tax "on bank capital, surplus and undivided profits, less assessed value of real estate included in such capital and surplus and undivided profits," should be "one and fifteen hundredths per centum of value, provided that for the year 1915 the tax on bank capital, surplus and undivided profits, shall be one and four-tenths of value." The ordinance also provided further that "the taxes upon such shares of stock in any bank, located and doing business in the city, shall be assessed and collected in accordance with the Acts of the General Assembly of Virginia of 1915."

In 1915, a stockholder owing debts was allowed, by section 17 of the tax bill (Acts 1903, chapter 148, as amended by Acts 1912, chapter 15), to deduct the amount of any debts he might owe from the valuation of his stock for taxation by the city and State. The statute, section 1040-a, Code of 1904, also required that the commissioner of the revenue for the city of Richmond, to whom the report was made, should not assess any stockholder in behalf of whom a certificate had been filed from a commissioner of the revenue in a locality within the State of Virginia, other than the city of Richmond, showing that such stockholder residing in such other locality had been there assessed with local taxes on his stock.

The Trust Company was required by section 19 of the tax bill (Acts 1903, chapter 148) to pay the taxes assessed against its stockholders; and by section 18 of the tax bill it was given a first lien on the shares of stock standing in each name on the date the list was filed with the Trust Company, and upon the dividends due and to become due thereon, and upon any other fund belonging to the stockholder which was in its hands, and was directed to apply the same to the payment of the taxes assessed.

It was the practice of the Trust Company, from its organization to the time of the filing of this suit, to pay the taxes to the city of Richmond for its stockholders, pursuant to section 1040-a of the Code of 1904, and charge them as expenses to the loss and gain account.

In the years 1915, 1919 and 1920, the payment of the taxes to the city of Richmond by the Trust Company, on behalf of the complainant and many other stockholders, was made without any deduction for any debts. Before making such payments to the city of Richmond, the Trust Company first ascertained from the assessment rolls the names of the stockholders on whose behalf certificates from other commissioners of the revenue had been filed, showing that their stock had been assessed for taxation in the locality in which the holder of the stock resided, other than the city of Richmond, as to which stock the Trust Company was not required to pay any local taxes. In order to bring about equality of distribution of corporate moneys, the Trust Company paid to each of such stockholders, in cash, a sum equal to the amount of local taxes they would have been compelled to pay in the absence of such certificate. The payments to these "outside" stockholders were made and charged to loss and gain as an expense just as the payments to the city of Richmond were charged.

In October, 1922, Frances W. Christian, executrix of . the will of Andrew H. Christian, Jr., deceased, suing on behalf of herself and all other owners of portions of the fund involved in the bill who would come into and contribute to the costs and expenses of the suit, filed her bill against the Richmond Trust Company in the instant case, praying that the defendant be required to account for the money erroneously paid to the city ·of Richmond by it in settlement of taxes assessed against the shares of the capital stock of the company; and that the Richmond Trust Company be required to pay to the complainants and other stockholders their proportionate shares of said funds.

Defendant answered the bill, claiming that the fund in controversy was the property of the Richmond Trust Company, and not that of the individual shareholders. The learned judge of the trial court, upon the pleadings, the stipulation of facts, the supplemental stipulation of·facts and arguments of counsel, decided the principles of the cause, and referred the papers to Commissioner W. E. Crawford to make certain inquiries and report to court.

Upon the coming in of the report of Commissioner Crawford, the judge overruled all exceptions thereto and confirmed the report.

This is an appeal from the decree of September 21, 1925, and July 24, 1926.

The major question involved in the instant case was passed upon adversely to the contention of the Trust Company when four of the judges of this court (the fifth being so situated that he could not sit), after a most careful consideration of the petition and record, refused to grant an appeal in the case of *Annie V. Archer's Admr.* v. *First National Bank of Richmond.* Under the ruling of the court in that case, $165,000.00

in taxes illegally assessed and paid by the bank were refunded and paid over to the individual stockholders of the bank.

While we have the power to reverse our ruling in the *Archer Case*, a careful consideration of the record, briefs and oral arguments in the instant case fails to disclose any sufficient reason why we should not in this case adhere to our ruling in that case.

The opinion of the learned judge of the trial court, Honorable Beverley T. Crump, upon the principles of the cause and upon the exceptions to the commissioner's report, are so fully in accord with our views that we adopt as the opinion of this court his opinion, in which he decides as follows:

"1. The demurrer to the bill, filed in one or more of the cases, may be overruled.

[2] "2. While the ordinance of the city of Richmond approved April 9, 1915, in fixing the rate of taxation, states that it shall be a certain per centum of the value 'on bank capital, surplus and undivided profits, less assessed value of real estate included in said capital and surplus and undivided profits,' I think it is clear that upon a consideration of the entire language, purpose and scope of the ordinance in its reference to banks, it was not the intention of the city to levy a tax directly upon the property of the banks *in solido*, as contended by the defendants. In explanation of the language above quoted, the ordinance further in express terms directs that the taxes upon the shares of stock in any bank shall be both assessed and collected in accordance with the general State law. This reference to the State statute shows that the intent and effect of the ordinance was only to require the tax to be assessed and collected upon the shares of stock as held by individual stockholders and in the manner prescribed in the general law of the State.

"The argument that under this ordinance a tax was levied *in solido* upon the assets of the bank was made in *Merchants National Bank* v. *Richmond*, 256 U. S. 635, 41 S. Ct. 619, 65 L. Ed. 1135, and in effect overruled by the court.

[3, 4] "Upon a review of the tax laws of Virginia under which the taxes for the years 1915, 1919 and 1920, in issue here, were assessed and paid, I am satisfied that the very object of these statutes was to refrain from laying any tax upon the capital or general assets of the bank. For this reason the legislature directed that these institutions should report the value of the stockholding of each stockholder to the end that the tax apply to the outstanding stock certificate of each holder, with the same effect as if the requirement had been that the banks should make and transmit to their stockholders the property value of each holding and the amount of the tax, and that each stockholder should pay his own tax. This tax legislation provides that no tax should be assessed upon the capital of any State or National bank or trust company, but that the stockholders should be assessed and taxed on their shares of stock, and the details of the assessment and collection of the taxes both in the State law and by the city ordinance were devised in order to preserve the main object of the law—that the tax should be upon the individual and separate property of the stockholder and not upon the capital of the banks as the banks' property. Section 18 of the tax bill provides that 'the tax assessed upon each stockholder in said bank, etc., shall be the first lien upon the *stock standing* in *his name* and upon the dividends thereof due and to become due, no matter in whose possession found, and shall have priority over all liens by deeds of trust,' etc., etc. (Italics mine.) By

section 19 the bank was directed to pay 'the tax assessed against its stockholders.' In effect, the bank is required to pay the tax for and on behalf of the stockholders.

"In view of the decisions in *Union Bank* v. *City of Richmond*, 94 Va. 316, 26 S. E. 821; *Main Street Bank* v. *Richmond*, 122 Va. 574, 95 S. E. 386; and the *Merchants National Bank Case*, in 258 U. S. 635, 41 S. Ct. 619, 65 L. Ed. 1131, I may seem to lay too great emphasis on this matter, but it is upon this leading feature of our legislation that the plaintiffs' case must rest.

[5] "My conclusion is that upon the report of the bank showing the name, and value of the stockholding of each stockholder, and amount of tax assessed against and to be paid for each, the aggregate amount of money when aggregated by the bank and paid to the city extinguished an indebtedness due by each stockholder, individually, and whatever method the bank might adopt for its reimbursement by each stockholder, the subsequent return of any portion of the money so paid must enure to the benefit of the stockholders proportionately. This is a plain statement, in ordinary language, of my conception of the equity of these cases. I do not think the right of the stockholders should be made contingent upon the ascertainment of the manner in which the bank undertook to account with its stockholders, or to equalize the tax payments among its stockholders so as to preserve their sharing in the profits of the bank exactly equal, or whether the payments were declared and charged against the stockholders as dividends, or deducted from regularly declared dividends. Equity regards the substance and not the form. The statutes and the ordinances by which the banks were governed, and under which they

were acting, became part and parcel of all their transactions touching the assessment and payment of these taxes.

"By virtue of these legislative enactments, when these taxes were paid by the banks for the stockholders, the respective portion paid for each stockholder became earmarked as funds belonging to him, and when any portion of it was returned by the recipient city, whether it went into the hands of the bank or otherwise, it was impressed with a trust in favor of the stockholder. Without dwelling upon the various arguments made by the learned counsel for the respective parties in regard to the necessity of placing all the stockholders upon an equal footing by reason of the cash payments made to out-of-city stockholders, and other matters, my opinion is that the plaintiff stockholders here are entitled to their proportionate shares of the money refunded to the banks in the compromise settlement.

"If it were made to appear that the distribution of the refunded tax in proper proportion among the stockholders on whose stockholdings it was paid to the city, would produce an unequal distribution of accumulated profits of the bank among all its stockholders, the case would present a different aspect. But the reverse appears. It is shown that cash payments were paid to stockholders not liable to the city tax, at the time the taxes were paid for the stockholders so liable, based upon the original amounts paid to the city, in order to put the out-of-city stockholders upon the same plane as the city stockholders, which resulted in allowing to each stockholder the withdrawal of the same amount from the profits of the bank.

[6, 7] "I am further of opinion that the contention of the defendants that the act of the plaintiffs in signing the written agreement, giving authority to the banks

to sue on behalf of each stockholder individually, constituted a waiver of their right to have the refund of the tax paid to them, cannot be sustained. The mere statement that the amount recovered would be 'added to the assets of the bank,' without evidence showing full knowledge of all the facts, on the part of the stockholder and his intention to surrender the right to the return of the money to him either out of the assets of the bank or otherwise, should not be allowed to operate as an estoppel against the stockholder to assert his right to the refund tax. The real essence of the letter of authority composed by the bank and sent out to their stockholders was simply a request for the right to proceed in the name of the individual stockholder for the reasons stated in the letter. It was held in *Cary* v. *N. W. Life Ins. Co.*, 127 Va. 236, 103 S. E. 580, that a waiver, in order to operate as an estoppel, must arise from conduct evidencing both knowledge and intention to waive the right in question, and the party against whom an estoppel is sought must by his conduct have caused the party who invokes the estoppel to have acted to his prejudice. I do not think there is sufficient here to show an intention to waive the stockholder's right. And the banks were not only not caused to act to their prejudice by reason of the granting of this authority, but it is rather established that they took no action at all under the agreement.

\* \* \* \* \* \* \* \* \*

"\* \* \* the court is of the opinion, and now decides, as follows:

[8] "That under the laws of Virginia in force in the years 1915, 1919 and 1920, being the years in which the fund involved herein and hereinafter mentioned was paid by the defendant on account of taxes to the city of Richmond, Virginia, all taxes, both State and local, '

assessed against shares of stock of a bank or trust company were imposed in the name of each and every stockholder of such bank or trust company, and upon the shares of the stock in such bank or trust company individually and separately owned respectively by such stockholders, and were not imposed upon the capital of such bank or trust company as a whole and as the property thereof.

[9] "That in making payment of such taxes, as required by law, such bank or trust company acted as the agent of its respective stockholders for whom said taxes were paid, in the discharge of an indebtedness charged against said stockholders and not against such bank or trust company; and that thereby all funds used for such purpose became earmarked as funds belonging to said stockholders.

"That, therefore, subject to the provisions of paragraph 4 of this, to-wit, subdivision II, of this decree, as hereinafter set forth, the fund repaid to the defendant by the city of Richmond, Virginia, from taxes paid by the defendant to said city in said years 1915, 1919 and 1920, on the assessed value of shares of stock of the defendant was received by the defendant for the benefit of, and now belongs proportionately to, the persons who were stockholders of the defendant, of record as of the first day of February in each of said years 1915, 1919 and 1920, in whose names and on whose behalf said money had been paid on account of taxes, proportionately, subject to the charge upon said fund of the expenses of this litigation, and other proper charges thereon, as hereafter allowed and decreed by the court; and that said fund, upon such repayment, became impressed with a trust in the hands of the defendant in favor of said persons, for which fund, with interest thereon at such rate as may be hereafter

determined by the court from the date of said repayment to the date of this decree, the defendant is liable to account to said persons, according to their respective interests in said fund, for which provision will be made in this decree and by further proceedings hereafter in this cause.

"That no waiver or estoppel or other bar exists as against the right of any of said persons to participate proportionately in the benefit of said fund by virtue solely of any such person having signed and delivered to the defendant, at its request, the writing in the form of the paper dated August 29, 1917, and filed as Exhibit No. 3 with said stipulation of facts dated February 6, 1925, but that the defendant is not precluded from showing by such other evidence as the defendant may introduce, in addition to the signing and delivery of such writing, a waiver, release, or other bar of or to such right of participation by said stockholders, or any of them.

[10] "That all of said persons entitled to said fund are liable to pay therefrom proportionately the costs, counsel fees and other expenses of this litigation, for which payment provision will hereafter be made by the court."

Dealing with exceptions to the report of Commissioner W. E. Crawford, the learned judge further says:

[11] "The plaintiff's counsel have noted an exception on the face of the report, objecting to the allowance of three per cent interest on the fund in the possession of the defendant, and insist it should be six per cent.

"I find among the papers four formally prepared exceptions to the report. They have not been regularly filed and should be properly noted in the decree to be entered. They are (1) exceptions by the plaintiff as to interest at three per cent above mentioned; (2) excep-

tion by Mr. Wall to so much of the report as denies the allowance of the fee claimed by him; (3) exception by the defendant company to so much of the report as finds that none of the stockholders have waived or released, or are in any other manner barred from, the right to participate in the benefit of the fund to be distributed; (4) exception by defendant company to so much of the report as finds that complainants' counsel are entitled to a fee upon a percentage of the entire net sum in the possession of the defendant.

"All the contentions of the several parties upon which these exceptions are based, are discussed in a judicial manner and with a commendable degree of thoroughness by the commissioner, from page 13 to page 466 of his report. I agree with him in his conclusions upon the law and the facts. Viewing the situation of the defendant from the standpoint of the basic principle of *quasi* trusteeship, upon which the decision in these several bank cases was rested, it was the original duty of the defendant to have distributed the fund in question, and I do not think any stockholder was barred from sharing in that distribution by the vote in the stockholders' meeting under the circumstances. Mr. Wall's claim seems to have been rather against the bank than against the fund, and no claim can properly arise against the fund except under the decision of the court in this case, in which for the first time the fund was impounded as a trust fund, and I have always thought that I had no authority to allow claims for fees against it except for services rendered in this suit, unless it was done practically by consent.

"I think the commissioner demonstrates very clearly that only three per cent interest should be charged on the fund against the bank, and that counsel engaged

in the case are entitled to a percentage fee out of the entire net amount.

"All exceptions may be overruled and the commissioner directed to further report a method for final distribution."

We find no error in the decree complained of.

*Affirmed.*