### GUESS v. LUMMUS COTTON GIN CO.
#### No. 3188.

Circuit Court of Appeals, Fourth Circuit.
Oct. 12, 1931.

E. H. Henderson, of Bamberg, S. C., for appellant.

P. F. Henderson, of Aiken, S. C. (Herbert E. Gyles and Hendersons & Salley, all of Aiken, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

Appellee, plaintiff below and herein referred to as the Lummus Company, brought this action to foreclose a chattel mortgage on a certain cotton gin outfit sold to the appellant, who will be hereinafter referred to as the defendant. The transactions all occurred in the state of South Carolina, and the suit was brought in the District Court of the United States for the Eastern District of that state.

Prior to the transaction involved here, the Lummus Company had sold the outfit in question to one R. H. Walker, and reserved a first mortgage on the property. While Walker owned it, no complaint was made that the gin did not operate properly. Walker died before the mortgage was satisfied, and it became necessary to sell the property. One R. S. Oliver was the agent of the Buckeye Cotton Oil Company, which company held a junior lien on the gin. The Lummus Company authorized the Buckeye Company to make sale of the gin, but expressly stated to the Buckeye Company that as it was a second-hand outfit they would sell it only as it was, that is, in its then condition. Oliver, as agent for the Buckeye Company, entered into negotiations with defendant for the sale of the gin, and in the latter part of June, 1928, an agreement was reached between them. The Walker mortgage was foreclosed, the Lummus Company purchasing the property. On July 11th the Lummus Company forwarded to the defendant the chattel mortgage sued on, which contained the following clauses:

"The said gin outfit has been sold by the Lummus Gin Company to the said St. C. P. Guess in its present condition and location at the R. H. Walker gin site at Seigling, South Carolina.

"The said ginning outfit will be removed by the within named mortgagor from its present location to a gin site on the right-of-way of the Atlantic Coast Line Railway Company at Denmark, South Carolina."

There is a conflict in the testimony as to just when this mortgage was signed, but it is uncontradicted that defendant had it in his possession on July 15, 1928. Defendant took possession of the outfit and operated it during the season of 1928, and made no complaint as to its operation until after the 16th of October of that year, when, in response to a wire from him, the Lummus Company said they would send a mechanic to make adjustments, but, as the machinery had been sold "as is and where is," the defendant would have to pay regular charges and travelling expenses. Defendant wrote the Buckeye Company to advise the Lummus Company they need not send any one to assist him with the gin as the season was over.

Some time in November, 1928, defendant went to the home office of the Lummus Company and complained of the outfit, but it is clear that even at that time defendant did not claim that there had been any express warranty made verbally by Oliver at the time he bought the gin. At this visit to the home office of the Lummus Company defendant also conferred with them relative to obtaining further extension of time upon his deferred payments. Defendant was told that the matter would be adjusted, and contends that the adjustment was promised with respect to the defective machinery, the Lummus Company contending that the adjustment referred to the past-due payments. The judge below, who heard the witnesses, found that the offer to adjust the matter was "a mere act of friendly assistance to a customer, and not an agreement to make good any warranty made by Mr. Oliver."

This finding of fact by the trial judge is strongly, if not conclusively, supported by the fact that after this conference and immediately on his return home the defendant had the mortgage as originally written, and containing the clause with regard to the outfit being sold "in its present condition," recorded and forwarded to the Lummus Company.

The defendant continued to operate the gin during the seasons of 1929 and 1930, but

failing to make his payments this foreclosure suit was brought in February, 1931. Defendant contended that verbal warranties made by Oliver had been breached and that he was entitled to a credit for the difference between the value of the gin as it was and its value as it would have been had it conformed to the warranty.

The learned judge below, in an able opinion, found for the Lummus Company and entered a decree of sale, from which action this appeal was brought.

The first question to be considered is whether, in view of the terms of the written contract as expressed in the chattel mortgage, defendant can rely on a verbal warranty. We are clearly of the opinion that he cannot do so. We know of nothing that would more unsettle business conditions and render unstable and uncertain transactions of every character than to allow a written instrument, presumably embodying the terms of an agreement, to be varied or changed by oral testimony. This is more especially true where the written instrument, signed by the party sought to be bound, speaks clearly and distinctly on the very point in dispute. The chattel mortgage, signed and delivered by the defendant himself, specifically includes the phrase "in its present condition." We can think of no words more emphatically exclusive of any warranty of any kind or character than these. Their equivalent, "as is and where is," is not more clear and unambiguous.

As was said in the decision of the Supreme Court in Seitz v. Brewer's Refrigerating Machine Co., 141 U. S. 510, 12 S. Ct. 46, 47, 35 L. Ed. 837: "Undoubtedly, the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proven by parol, if, under the circumstances of the particular case, it may properly be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them. But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and

manner of their undertaking, were reduced to writing."

In Peerless Coal Co. v. Steffey & Findley, Inc., 297 F. 829, this court has held to the same effect.

There is in this record no conflicting testimony on this point, and the plain terms of the written instrument must prevail.

An examination of the record, aside from the chattel mortgage, leads to the conclusion that the Lummus Company never intended to warrant the outfit. That company had never examined the gin after it had become secondhand. Nor did the defendant act throughout as though he relied on any warranty.

Moreover, the judge below found from the evidence that had there been any such warranty, as was claimed by defendant, it had not been breached, but that the fault lay in the way the gin was operated, and not in any defect in the machinery.

■ "Finding of trial court as to breach of warranty will not be reversed unless clearly not supported by law or testimony." Williamson Daily News v. Linograph Co. (C. C. A.) 47 F.(2d) 523.

The findings of the judge below were correct, both as to the facts and the law; and the decree is accordingly affirmed.