### VICTOR PRODUCTS CORPORATION v. YATES–AMÉRICAN MACH. CO.

#### No. 3191.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

E. Dulaney Ott, of Harrisonburg, Va., and T. Russell Cather, of Winchester, Va., for appellant.

Leslie C. Garnett, of Washington, D. C., and John Paul, of Harrisonburg, Va. (Carlin & Carlin, of Alexandria, Va., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and McCLINTIC, District Judge.

NORTHCOTT, Circuit Judge.

This is an action at law brought in May, 1930, in the United States District Court for the Western district of Virginia, at Harrisonburg, Va., whereby the Yates-American Machine Company, a Delaware company having its principal office in the city of Beloit, Wis., the appellee, brought an action in assumpsit to recover from the Victor Products Corporation, the appellant, $5,189 and interest, on a certain contract in writing with the Acorn Manufacturing Corporation, a corporation organized under the laws of Virginia, and having its principal office at Winchester, Va.

On the trial in October, 1930, the judge below directed a verdict in favor of the plaintiff for the amount sued for with interest, and entered judgment for the same, from which action this appeal was brought.

In December, 1922, the appellee entered into a written contract with the Acorn Company to sell that company certain wood-working machinery. The plaintiff company was not the manufacturer of the machines sold, but was sales agent for the L. G. McKnight & Son Company, a Massachusetts company, the manufacturer.

The pertinent part of the contract reads as follows:

"It is agreed that title to the property mentioned herein, and all subsequent additions thereto, shall remain in Yates-American Machine Company until fully paid for in cash; that in case of rejection of the property forwarded, or failure to pay as stated herein, undersigned (the purchaser) shall at once return and deliver the property in good order to consignor F. O. B. Cars, at point of origin; that a retention of the property forwarded after thirty days from the date of arrival shall constitute an acceptance, be a conclusive admission of the truth of all the representations made by or for the consignor, and void all its contracts of warranty, express or implied. It is also agreed that in case of failure to pay any installments herein provided, the whole unpaid balance shall at once become due and payable, and consignor or its agents shall have the right, with or without legal process, to retake possession of the said property and, at its option, either retain it, (all payments made theretofore to be forfeited as compensation for its use as liquidated damages) or sell it at public auction or private sale; that the entire expense, and in case of suit all taxable costs, of such retake, return to point of origin and resale and the deficiency, if any there be after net proceeds are applied, shall at once be paid by the purchaser.

"It is agreed that this contract is not modified or added to by any agreement not expressly stated herein; that this Contract shall not hereafter be changed or modified in any respect unless a written memorandum embodying such changes or modifications, duly stated, signed by both parties hereto, and bearing distinct date reference to this contract be attached to and made part of this agreement."

The machines were duly shipped and received by the Acorn Company on February 13, 1928, and were installed and put in operation during the ensuing week or ten days. The Acorn Company made no complaint as to the working of the machines to the plaintiff until May 1, 1928, after the thirty-day period mentioned in the contract had expired. The officials of the Acorn Company claimed to have made some complaint in March, 1928, to the McKnight Company, the manufacturer.

Upon demand being made by the plaintiff for the purchase price, the Acorn Company refused to pay, alleging that the machines had never worked in a satisfactory manner, and claimed damages for their defective operation.

Later, the appellant company was organized for the purpose of consolidating several

companies, among them the Acorn Company, the purchaser of the machines.

Where such merger or consolidation has taken place, it is provided under section 3823 Code of Virginia that: "All debts, liabilities, and duties of either of said companies shall thenceforth attach to said new corporation and be enforced against it to the same extent as if the said debts, liabilities, and duties had been incurred or contracted by it."

In addition, the Victor Products Company took over all the assets of the Acorn Company, and expressly agreed to assume all the liabilities of that company.

■ The trial judge refused to permit the introduction of any evidence, as to any verbal warranty of the machines made by the selling agents, and struck out the defendant's plea of set-off based on the faulty action of the machines. In doing this, we are of the opinion that the learned judge was clearly right. This court has recently discussed the question of attempting to vary a written contract that solemnly declares, as does the one here, that the writing contains the entire contract, and that no modification or change will be made, except made in writing and signed by both parties.

In St. C. P. Guess v. Lummus Cotton Gin Co., 52 F.(2d) 948, 949, decided October 12, 1931, this court said: "The first question to be considered is whether, in view of the terms of the written contract as expressed in the chattel mortgage, defendant can rely on a verbal warranty. We are clearly of the opinion that he cannot do so. We know of nothing that would more unsettle business conditions and render unstable and uncertain transactions of every character than to allow a written instrument, presumably embodying the terms of an agreement, to be varied or changed by oral testimony. This is more especially true where the written instrument, signed by the party sought to be bound, speaks clearly and distinctly on the very point in dispute."

As was tersely stated by the judge below in this case: "No principal can protect himself by the most carefully prepared contract that ever was conceived if the man who is authorized to do something is allowed to do something else, and then the principal is to be charged with something else. It is only on the clearest and most compelling evidence of full knowledge by the principal of an assertion of agency by the agent, outside of his necessary authority, that the principal can be bound by the action of an agent."

■ Nowhere is the rule that a written agreement, expressly excluding any inconsistent agreement, may not be varied or changed, more rigidly adhered to than in Virginia. The court will not make a contract for the parties. Continental Trust Co. v. Witt, 139 Va. 458, 124 S. E. 265; Mathieson Alkali Works v. Va. Banner Coal Corp., 147 Va. 125, 136 S. E. 673; Blake Co. v. Smith, 147 Va. 960, 133 S. E. 685. See, also, Chesapeake & Va. Coal Co. v. Rich Block Coal Co. (C. C. A.) 291 F. 1011.

This being the law, the Acorn Company, having received the machines and retained them after thirty days, was estopped, in the absence of any waiver of the conditions of the agreement by the seller, from claiming any damages by way of set-off, and was bindingly obligated to pay the purchase price agreed on.

■ The trial judge held, as a matter of law, that there was no waiver proven in the trial, although the attorneys for defendant company claimed and attempted to prove a waiver. A careful examination of the evidence introduced leads us to the conclusion that the judge was right. He aptly stated his conclusions as follows: " * * * The conclusion had been reached that nothing in the correspondence reasonably tends to show an intention to waive any part of the plaintiff's rights under the contract, except the right to immediate payment on the expiration of the thirty days after the machines were received. An intention to show consideration for the interests of the purchaser and an intention to delay peremptory demand for payment is shown; but everything said and done by the plaintiff, as shown by the correspondence, is consistent with an intention to strictly reserve all other rights of the plaintiff. Mere indulgence as to the time of payment, because of the purchaser's dissatisfaction about the working of the machines, is all that he believed can be reasonably derived from the correspondence."

The rule is thus stated in 27 R. C. L., § 6, p. 909: "To make out a case of waiver of legal right, there must be a clear unequivocal and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part. A waiver to be operative must be supported by a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting upon performance of the contract." See, also, Ford Motor Co. v. Switzer, 140 Va. 383, 125 S. E. 209; Atlantic Coast Line R. R. v. Bryan, 109 Va.

523, 65 S. E. 30; Richmond Trust Co. v. Christian, 150 Va. 244, 142 S. E. 528.

Notwithstanding the retention of the title to the machines by the seller, it had the right to sue for the purchase price. The retention of title was simply additional security, and the right to sue for the purchase price is in no way affected by retention of the title. Under this contract, the seller could exercise either remedy at its election, that is, reclaim the property or sue for purchase price. 24 R. C. L., p. 489; Morgan-Gardner Electric Co. v. Beelick Knob Coal Co., 91 W. Va. 347, 112 S. E. 587; Southern Manufacturing & Supply Co. v. Klavan, 125 Va. 438, 99 S. E. 566. Compare Montauk I. C. Co. v. Daigger Co., 141 Va. 686, 126 S. E. 681; Birdsong & Co. v. American Peanut Corporation, 149 Va. 755, 141 S. E. 759.

Assignments of error were made as to the admission of testimony, but they are without merit.

The judgment of the court below is affirmed.